1    Peter Anderson, Esq. (Cal. Bar No. 88891)
        peteranderson@dwt.com
2    Nicolette Vairo, Esq. (Cal. Bar No. 311592)
        nicolettevairo@dwt.com
3    DAVIS WRIGHT TREMAINE LLP
     865 South Figueroa Street, 24th Floor
4    Los Angeles, California  90017-2566
     Telephone:  (213) 633-6800
5    Fax:  (213) 633-6899

6    Attorneys for Defendants
     ABEL M. TESFAYE, JASON QUENNEVILLE,
7    AHMED BALSHE, WASSIM SALIBI,
     THE WEEKND XO, LLC, THE WEEKND XO, INC.,
8    THE WEEKND XO MUSIC, ULC, DAHEALA & CO.,
     LLC, SAL & CO MANAGEMENT LP, SAL & CO LP,
9    XO&CO., INC., UNIVERSAL MUSIC GROUP, INC.,
     UMG RECORDINGS, INC., UNIVERSAL MUSIC
10   PUBLISHING, INC., UNIVERSAL MUSIC
     CORPORATION, KOBALT MUSIC PUBLISHING
11   AMERICA INC., WARNER CHAPPELL
     MUSIC, INC., WB MUSIC CORP., and
12   SONGS MUSIC PUBLISHING, LLC

13

14                   **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16                       **WESTERN DIVISION**

| | |
|---|---|
| 17  William Smith; Brian Clover; Scott McCulloch, | Case No. 2:19-cv-02507-PA-MRWx |
| 18                          Plaintiffs, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| 19         v. | MOTION TO DISMISS |
| 20  The Weeknd; Abel M. Tesfaye (p/k/a The Weeknd); Jason Quenneville (p/k/a | [Fed. R. Civ. P. 12(b)(6)] |
| 21  DaHeala); Ahmad Balshe (p/k/a Belly); Savan Harish Kotecha; Ali Payami; Karl | Date: November 18, 2019 |
| 22  Martin Sandberg (p/k/a Max Martin); Peter Anders Svensson; The Weeknd XO, | Time: 1:30 p.m. |
| 23  LLC; The Weeknd XO, Inc.; DaHeala & Co., LLC; MXM, LLC; MXM Publishing; | Courtroom of the Honorable Percy Anderson |
| 24  MXM Music AB; Wolf Cousins; Universal Music Group, Inc. Universal | United States District Judge |
| 25  Music Publishing, Inc.; Universal Music Corporation; Universal Music Publishing | |
| 26  LTD; Universal Music Publishing BL Limited; Big Life Music Ltd; Kobalt | |
| 27  Songs Music Publishing, Inc.; KMR Music Royalties II SCSP; SONGS Music | |
| 28  Publishing LLC; Songs of SMP; [Continued next page] | |

1  Warner/Chappell Music, Inc.; WB Music          )
   Corp.; Warner/Chappell Music                    )
2  Scandinavia AB Sal and CO Manage-               )
   ment LP; Sal and CO LP; Wassim Salibi           )
3  (aka Tony Sal) (general partner of Sal          )
   and Co); Artist Nation Management               )
4  Group, Inc. (general partner of Sal and         )
   Co); The Weeknd XO Music, ULC                   )
5  XO&co., Inc. (d/b/a XO) UMG Record-             )
   ings, Inc. (d/b/a Republic Records);            )
6                                                  )
                    Defendants.                    )
7                                                  )
                                                   )
8  _____        )
                                                   )

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

1. INTRODUCTION ...................................................................................1

   (a)   Summary of Argument.................................................................1

   (b)   Summary of the First Amended Complaint's Allegations .....................3

      (1)   Plaintiffs Are UK Residents Who Claim to Have Written a Musical Composition in 2005 that Has Never Been Published...................................................................................3

      (2)   Plaintiffs' Allegations that Defendants Directly Infringed the Copyright in Plaintiffs' Unpublished Musical Composition...................................................................................3

      (3)   Plaintiffs' Allegations that Defendants Contributorily and Vicariously Infringed Plaintiffs' Copyright ..................................4

      (4)   Plaintiffs' Amended State Law Claims ........................................5

      (5)   The Claims that Plaintiffs Assert...................................................6

2. PLAINTIFFS' SECOND THROUGH SIXTH CLAIMS SHOULD BE DISMISSED ...........................................................................................6

   (a)   The Standards Governing the Rule 12(b)(6) Motion to Dismiss............6

   (b)   Each of Plaintiffs' Secondary Liability Claims Fails to State a Plausible Claim for Relief........................................................7

      (1)   Plaintiffs Try to Skirt the Court's Order that They Not Plead Direct and Secondary Liability Claims Against the Same Defendants ...................................................................................7

      (2)   Plaintiffs Still Fail to Plead a Plausible Claim for Contributory Copyright Infringement ...........................................8

      (3)   Plaintiffs Still Fail to Plead a Plausible Claim for Vicarious Copyright Infringement ..............................................10

i

(c)    Plaintiffs' State Law Claims for an Accounting, Constructive Trust, and Unjust Enrichment Again Fail as a Matter of Established Law ..................................................................12

    (1)    Plaintiffs Fail to Allege that their Sixth Claim for Unjust Enrichment Is Pleaded in the Alternative ....................................13

    (2)    Plaintiffs Fail to Plead Their "Secret License" Theory ..............13

    (3)    A License to Use *I Need to Love* Would Not Save Plaintiffs' State Law Claims ..........................................................14

        (i)    If Plaintiff's UK Publishers Issued a License, Plaintiffs' Claims Would Be Against Them, Not Defendants ..........................................................14

        (ii)    Plaintiffs' UK Publisher's Issuance of a License to Use *I Need to Love* Would Not Make Plaintiffs Co-Owners of *A Lonely Night* ..................................15

    (4)    Plaintiffs' Claims Are Preempted if, as Plaintiffs Allege, Their UK Publishers Were Not Authorized to Grant a License ..................................................................16

3.    CONCLUSION ..................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ........................................................... 9, 10

*Adobe Sys. Inc. v. Canus Prods., Inc.*,
173 F. Supp. 2d 1044 (C.D. Cal. 2001) ................................................ 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................... 7, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................. 7, 8, 13

*Brownstein v. Lindsay*,
742 F.3d 55 (3d Cir. 2014) .......................................................... 15, 16

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018) ............................................................ 13

*eCash Tech. v. Guargliardo*,
127 F. Supp. 2d 1069 (C.D. Cal. 2000) ................................................. 6

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir. 2004) .......................................................... 11

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) .......................................................... 15

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ............................................................ 11

*Ileto v. Glock. Inc.*,
349 F.3d 1191 (9th Cir. 2003) ........................................................... 6

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) .......................................................... 17

*Luvdarts, LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ..................................................... 8, 10, 11

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011) ............................................................ 17

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) ............................................................ 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .......................................................... 11

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .............................................................. 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ......................................................... 9, 11

*Piantadosi v. Loew's, Inc.*,
    137 F.2d 534 (9th Cir. 1943) ............................................................ 14

*Rodriguez v. Sony Comput. Entm't Am., LLC*,
    801 F.3d 1045 (9th Cir. 2015) ............................................................ 7

*Royal Primo Corp. v. Whitewater W. Indus., Ltd.*,
    2016 WL 1718196 (N.D. Cal. 2016) .................................................... 7

*Salim v. Lee*,
    202 F. Supp. 2d 1122 (C.D. Cal. 2002) .............................................. 17

*Stewart v. Abend*,
    495 U.S. 207 (1990) .......................................................................... 15

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) .......................................................... 14

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) .............................................................. 7

*Worth v. Universal Pictures, Inc.*,
    5 F. Supp. 2d 816 (C.D. Cal. 1997) .................................................. 17

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) ............................................................ 14

iv

**Statutes**

17 U.S.C.

§§ 101 *et seq.* (Copyright Act of 1976)..........................................................*passim*
§ 103(b)...............................................................................................15
§ 301(a)...............................................................................................17

**Rules**

California Local Rule 7-3 ............................................................................. 1, 8

Federal Rules of Civil Procedure

8(a)(2) ......................................................................................................9
12(b)(6)..........................................................................................6, 8, 11
50(a)......................................................................................................16

**Other Authorities**

M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT (2019)................................ 14, 15

WILLIAM F. PATRY, PATRY ON COPYRIGHT (2019) ....................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

### (a)    Summary of Argument

The Court provided plaintiffs a second chance to plead five of their claims but plaintiffs either ignore or try to skirt the Court's August 23, 2019 Order (Doc. 56).

Plaintiffs allege that a musical composition they wrote in the United Kingdom (the "UK") in 2005, but never published, *I Need to Love*, was copied by a song, *A Lonely Night*, created in Los Angeles, California, in 2016.  Their Complaint (Doc. 1), and now their First Amended Complaint (Doc. 66), each asserts against all defendants a first claim for direct copyright infringement by creating *A Lonely Night* and publicly distributing and performing it.  Plaintiffs have struggled in their efforts to add claims for secondary copyright infringement liability and state law claims.

In their Complaint, plaintiffs alleged that all defendants are direct and also contributory and vicarious copyright infringers, and plaintiffs included conclusory allegations of the requirements for those two secondary liability theories.   In dismissing those last two claims with leave to amend, the Court instructed plaintiffs:

> Any amended claims for contributory and vicarious copyright infringement must include well-pleaded facts as opposed to legal conclusions in support of those claims and cannot be based on a theory that defendants are simultaneously directly and secondarily liable for infringement.

Aug. 23, 2019 Order at 5.

However, plaintiffs' First Amended Complaint continues to rely on conclusory allegations and continues to level against all defendants allegations of direct, contributory, and secondary liability.  In a transparent attempt to sidestep the Court's Order, plaintiffs simply add that if a defendant is not directly liable, he or it is contributorily and vicariously liable.  In the Local Rule 7-3 pre-filing conference, plaintiffs' counsel explained that they do not know who might be secondarily liable

1    and included the claims just in case the jury concludes those theories apply.  Given

2    plaintiffs' failure to comply with the Court's Order, as well as plaintiffs' concession

3    that they are unable to identify each supposedly secondarily liable defendant and

4    allege a plausible claim for that defendant's contributory or vicarious liability, these

5    claims should again be dismissed, this time without leave to amend.

6         In their Complaint, plaintiffs also alleged state law claims for an accounting,

7    imposition of a constructive trust, and unjust enrichment.  In opposition to the prior

8    Motion to Dismiss, plaintiffs conceded the claims are preempted by the Copyright Act

9    of 1976, 17 U.S.C. Sections 101 *et seq.*  But plaintiffs argued that they assert these

10   claims in the alternative to their copyright claims in case plaintiffs' prior music

11   publishers licensed the alleged use of *I Need to Love* in *A Lonely Night*.  In dismissing

12   these state law claims with leave to amend, the Court instructed plaintiffs:

13        "[T]he Complaint does not contain adequate well-pleaded allegations

14        supporting this 'secret license' theory or expressly state that Plaintiffs are

15        pursuing their state law claims in the alternative should a 'secret license'

16        provide defendants with a defense to the copyright infringement claims,

17        . . . ."

18   Aug. 23, 2019 Order at 8.

19        Although plaintiffs' First Amended Complaint expressly states that plaintiffs

20   assert the accounting and constructive trust claims as alternatives to the copyright

21   infringement claims, there is no such express statement in plaintiffs' amended unjust

22   enrichment claim.  Further, plaintiffs do not plead facts supporting a license theory

23   and, quite the contrary, they speculate that defendants may claim a license, and add

24   that plaintiffs do not believe any such license was authorized.  In addition, if such a

25   license was issued, then plaintiffs' remedies would be against the licensor—*i.e.*, one

26   of the two UK music publishers plaintiffs have dismissed from the case—and if such

27   a license was not issued, then these state law claims are preempted by the Copyright

28   Act.  These state claims should again be dismissed, this time without leave to amend.

**(b)**   **Summary of the First Amended Complaint's Allegations**

Solely for the purposes of this Motion, the First Amended Complaint's properly pleaded allegations, although strenuously disputed, are taken as true.

**(1)**   **Plaintiffs Are UK Residents Who Claim to Have Written a Musical Composition in 2005 that Has Never Been Published**

Plaintiffs William Smith, Brian Clover and Scott McCulloch are "three UK songwriters" who claim that in 2004-05 they jointly wrote and recorded a musical composition they refer to as *I Need to Love*. FAC at 2, ¶ 2. Plaintiffs do not allege that *I Need to Love* was ever released to the public and they allege they registered an "SRu" copyright in *I Need to Love* as an unpublished work and without identifying any publication date. FAC at 7, ¶ 27, & Exh. 2 (Doc. 1-2).

**(2)**   **Plaintiffs' Allegations that Defendants Directly Infringed the Copyright in Plaintiffs' Unpublished Musical Composition**

Plaintiffs allege that in 2005 they granted rights in their composition, *I Need to Love*, to Big Life Music Ltd., a UK company ("Big Life UK"), that they allege "pitched [*I Need to Love*] all over the world to many artists . . . ," none of whom plaintiffs identify. FAC at 3, ¶¶ 3-4.

Plaintiffs allege that in 2008 Big Life UK was acquired by Universal Music Publishing Group. *Id.* at 3, ¶ 5, & at 20, ¶ 132. However, plaintiffs previously alleged that Big Life UK was acquired by Universal Music Publishing BL Limited (for convenience, only, "Universal Publishing UK") and it is Universal Publishing UK that acquired Big Life UK's rights to plaintiffs' *I Need to Love*. Complaint (Doc. 1) at 3, ¶¶ 3-5. Plaintiffs initially named Big Life UK and Universal Publishing UK (collectively, plaintiffs "UK Publishers") as defendants, but plaintiffs have since dismissed them. Notice of Voluntary Dismissal (Doc. 60) at 2:11-12.

Plaintiffs—conflating all of the separate Universal companies across the world as "Universal Music Group" or "Universal"—speculate that it was "through the Universal Defendants that the other Defendants found and copied" *I Need to Love* in

3

*A Lonely Night*, released in the album *Starboy*.  FAC at 1, ¶ 1, at 3, ¶¶ 7-10, at 19, ¶ 124, at 20, ¶ 133, & at 29, ¶ 206.  Plaintiffs allege that "all Defendants' [*sic*] license, permit, or otherwise allow the infringing song to be exploited by physical sales and also online via streaming and digital downloads."  FAC at 8, ¶ 33.  Plaintiffs also allege that "Defendants violated Plaintiffs' exclusive rights by . . . a. copying and reproducing Plaintiff's work without permission, b. preparing derivative works based upon Plaintiffs' copyright which are substantially similar to Plaintiffs' work, c. distributing copies of the copyrighted work to the public, d. performing the work publicly."  *Id.* at 31, ¶ 222.

**(3)**   **Plaintiffs' Allegations that Defendants Contributorily and Vicariously Infringed Plaintiffs' Copyright**

As before, plaintiffs' First Amended Complaint not only alleges that all defendants are direct infringers, but peppers the pleading with contributory infringement and vicarious infringement buzzwords.  Thus, plaintiffs, merging contributory infringement verbiage with direct infringement allegations, repeat word-for-word as to every defendant:

> "At all points . . . Defendant[s] knew of the infringement and also materially contributed and caused the infringement by, including but not limited to, promoting, distributing, and selling The Weeknd's *Starboy* and/or 'A Lonely Night' and/or permitting their use.  This includes by licensing the song's use, or allowing the same, on streaming and digital download services such as Spotify, YouTube, Pandora, Amazon, iTunes, and others."

*Id.* at 11-28, ¶¶ 55, 63, 69, 75, 82, 87, 94, 99, 95, 105, 110, 117, 122, 129, 141, 149, 154, 160, 167, 173, 179, 184, 189, 194, 200.  As for vicarious infringement, plaintiffs allege that every defendant supposedly "knows about the infringement (i.e. the exploitation of 'A Lonely Night' on the Internet and by physical sales), encourages and wants the exploitation to occur, has the right to control such infringement, and

4

1   receives financial compensation as a result of the exploitation of the infringing work

2   'A Lonely Night.'"  *Id.* at 8-9, ¶ 35.

3       Having retained in their First Amended Complaint conclusory allegations that

4   all defendants are direct, contributory, and vicarious infringers, plaintiffs add the

5   following allegation to their second claim for contributory copyright infringement:

6       "In the event that some or all of Defendants' actions and inactions are

7       determined to not be directly infringing, then they are alleged to be

8       contributorily infringing.   For instance, as this complaint details,

9       Defendants license, market, and otherwise allow the song to be placed

10      on streaming and download services, where third parties infringe the

11      copyright, for which Defendants receive remuneration."

12  *Id.* at 33, ¶ 229.  Similarly, plaintiffs add this allegation to their third claim for

13  vicarious copyright infringement:

14      "In the event that some or all of Defendants' actions and inactions are

15      determined to not be directly infringing, then they are alleged to be

16      vicariously infringing.   For instance, as this complaint details,

17      Defendants have the right and ability to stop or limit the exploitation of

18      the infringing song on streaming and download services, but have

19      declined to do so.  They receive remuneration for the exploitation of the

20      songs on these services."

21  *Id.* at 35, ¶ 236.

22              **(4)    Plaintiffs' Amended State Law Claims**

23      In their First Amended Complaint, plaintiffs allege that their accounting and

24  constructive claims are each "alleged in the alternative to the copyright infringement

25  claims."  FAC at 37, ¶ 242, & at 39, ¶ 252.  They omit that statement in their unjust

26  enrichment claim.  *Id.* at 41-42.

27      As to a "secret license," plaintiffs allege in each of their three state claims that

28  they "are alleging that Defendants acquired their song through Universal, which

5

represented both Plaintiffs and many of the Defendants," and that "Defendants will likely claim at some point in this lawsuit that they were given permission by Universal to use the song, and that because they allegedly had a license they are not liable for copyright infringement." *Id.* at 37, ¶ 245, at 39, ¶ 255, & at 41, ¶ 262.  Plaintiffs allege, however, that they "do not believe that Universal had the right or ability to authorize the other Defendants to use Plaintiffs' copyright to create 'A Lonely Night.'" *Id.* at 37, ¶ 246, at 39, ¶ 256, & at 41, ¶ 263.

Plaintiffs also add a footnote asserting if defendants' alleged use of their work was licensed, plaintiffs would be entitled to a declaration that they have an ownership interest in the resulting derivative work.  *Id.* at 37, ¶ 247, at 39, ¶ 257, & at 41, ¶ 264.

### (5) The Claims that Plaintiffs Assert

Plaintiffs' First Amended Complaint asserts the following claims, each expressly "against all defendants":

> 1. Direct copyright infringement;
> 2. Contributory copyright infringement;
> 3. Vicarious contributory infringement;
> 4. An accounting;
> 5. Imposition of a constructive trust; and
> 6. Unjust enrichment.

*Id.* at 29-37, ¶¶ 233-68.

## 2. PLAINTIFFS' SECOND THROUGH SIXTH CLAIMS SHOULD BE DISMISSED

### (a) The Standards Governing the Rule 12(b)(6) Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  While "[t]he Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them" (*eCash Tech. v. Guargliardo*, 127 F. Supp. 2d 1069, 1074 (C.D. Cal. 2000)), the

plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Also, it is "well established" that the Court may measure the plausibility of an amended pleading against prior pleadings. *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, 2016 WL 1718196, at *3 (N.D. Cal. 2016) (citing *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015)). An amended complaint should generally contain "additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citation omitted);

    **(b)**   **Each of Plaintiffs' Secondary Liability Claims Fails to State a Plausible Claim for Relief**

        **(1)**   **Plaintiffs Try to Skirt the Court's Order that They Not Plead Direct and Secondary Liability Claims Against the Same Defendants**

The Court's Order could not have been clearer: "a defendant cannot be secondarily liable for that defendant's own direct infringement" and plaintiffs' amended secondary liability claims "cannot be based on a theory that defendants are simultaneously directly and secondarily liable for infringement." Aug. 23, 2019 Order at 5. To comply, plaintiffs would have to parse out the alleged direct and secondarily liable infringers and, as to each defendant, allege facts establishing either a plausible

///

1  claim of direct infringement, a plausible claim of contributory infringement, or a
2  plausible claim of vicarious infringement.

3       Instead, plaintiffs continue to assert against all defendants allegations of direct
4  infringement, allegations of contributory infringement, and allegations of vicarious
5  infringement. *See above* at 3-5. Attempting to skirt the Court's Order, plaintiffs
6  simply add that "Defendants" are either directly or secondarily liable.

7       Thus, plaintiffs' amended claim for contributory infringement now adds a
8  paragraph stating that if "some or all of Defendants' actions and inactions are
9  determined to not be directly infringing, then they are alleged to be contributorily
10 infringing," followed by a conclusory recitation of the elements of contributory
11 infringement. *See above* at 5:3-12; FAC at 33, ¶ 229. Likewise, plaintiffs' amended
12 claim for vicarious infringement now adds a paragraph stating that if "some or all of
13 Defendants' actions and inactions are determined to not be directly infringing, then
14 they are alleged to be vicariously infringing," followed by a conclusory recitation of
15 the elements of vicarious infringement. *See above* at 5:12-21; FAC at 35, ¶ 236.

16      Plaintiffs' allegations may be expedient—plaintiffs admitted in the Local
17 Rule 7-3 pre-filing conference that they do not have a basis to allege that any particular
18 defendant is a contributory or vicarious infringer—but plaintiffs' allegations that all
19 "Defendants" are either directly, contributorily, or vicariously liable is contrary to the
20 text and spirit of the Court's August 23, 2019 Order.

21      **(2)   Plaintiffs Still Fail to Plead a Plausible Claim for Contributory**
22           **Copyright Infringement**

23      In granting plaintiffs leave to amend their second claim for contributory
24 infringement, the Court directed that plaintiffs "must include well-pleaded facts as
25 opposed to legal conclusions . . . ." Aug. 23, 2019 Order at 5; *see also Luvdarts, LLC*
26 *v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (claim for contributory
27 copyright infringement based on conclusory allegations of the claim's requirements
28 fails to survive a Rule 12(b)(6) motion to dismiss); *Twombly*, 550 U.S. at 555 ("[A]

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *quoting* Fed. R. Civ. P. 8(a)(2)).  However, plaintiffs' amended contributory infringement claim again relies on conclusory allegations and still does not provide fair notice of why any particular defendant is supposedly contributorily liable.

Contributory copyright infringement is "a form of secondary liability" and applies if a defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017), *quoting* *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).  For example, a company whose website enables users to share infringing copies is not a direct infringer—the company is not making or distributing the infringing copies—but may be a contributory infringer by knowingly facilitating the users' direct infringements.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001).  Plaintiffs allege no such thing here and, indeed, plaintiffs again do not allege how defendants, as a whole, or any particular defendant, supposedly contributorily infringed.

Because, as plaintiffs have advised, they do not know of a basis to charge any defendant with contributory infringement, plaintiffs again resort to bare and mutually exclusive allegations.  Their second claim for contributory infringement is asserted against all defendants but incorporates their first claim's allegations that all defendants are direct infringers.  FAC at 29-31, ¶¶ 223-37.  Plaintiffs fail to identify any particular defendants that plaintiffs contend are instead contributorily liable.  Neither do plaintiffs allege facts establishing a plausible claim that any of the defendants, *e.g.*, materially contributed to or induced "another's" direct infringement.  *Id.* at 31, ¶ 223, at 33, ¶229, at 35, ¶ 236.  Rather, plaintiffs rely on their word-for-word repetition, as to every defendant, of the requirements of contributory infringement, adding only (1) the names of non-parties who plaintiffs claim have been licensed to stream or

download *A Lonely Night* (*see above* at 4:20-23) and (2) the allegation that if "Defendants" are not direct infringers, they are contributory infringers (*see above* at 5:3-12 & 7-8).  These allegations do not state a plausible claim for contributory infringement against "Defendants" as a whole or any particular defendant.

These allegations also fail to provide defendants, and each defendant, the required fair notice of the basis of the contributory infringement claim that plaintiffs assert against them.  *Iqbal*, 556 U.S. at 678.  That is no surprise given that plaintiffs admit they do not know which, if any, defendants are supposedly contributory infringers, instead plaintiffs hope to leave it to the jury to sort out.

Plaintiffs' second claim for contributory copyright infringement again impermissibly relies on conclusory allegations indiscriminately repeated verbatim as to each and every defendant.  The claim should be dismissed and—given plaintiffs' failure to comply with the Court's Order and plaintiffs' admitted inability to plead the claim—this time should be dismissed without leave to amend.

### (3)   Plaintiffs Still Fail to Plead a Plausible Claim for Vicarious Copyright Infringement

The Court's admonition that plaintiffs "must include well-pleaded facts as opposed to legal conclusions . . ." also applies to plaintiffs' re-pleading of their third claim for vicarious copyright infringement.  Aug. 23, 2019 Order at 5; *see also Luvdarts*, 710 F.3d at 1071-72 (claim for vicarious copyright infringement based on conclusory allegations of the claim's requirements properly dismissed at pleading level).  But plaintiffs' amended vicarious infringement claim again relies on conclusory allegations and still does not provide fair notice of why any particular defendant is supposedly vicariously liable.

"Vicarious copyright liability is an 'outgrowth' of respondeat superior [and] requires that the defendant had both the (1) 'right and ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity."  *Luvdarts*, 710 F.3d at 1071, *quoting Napster*, 239 F.3d at 1022.  For example, the owner of a swap

meet where vendors sell bootleg recordings is not directly liable—it did not make or sell the bootleg recordings—but may be vicariously liable for the vendors' direct infringements. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996). Once again, plaintiffs do not allege anything of that sort as the basis of their claim, and still do not allege how defendants, as a whole, or any particular defendant, supposedly vicariously infringed.

To state a claim for vicarious liability, plaintiffs must allege, *inter alia*, well-pleaded facts that defendants have the right and ability to control the alleged directly infringing conduct of others. *Visa Int'l Serv. Ass'n*, 494 F.3d at 802. "[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); *see also Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1054 (C.D. Cal. 2001). Here, plaintiffs offer nothing more than the same bare conclusion, repeated word-for-word as to every defendant, both individuals and companies, that "[a]t all points Defendant had the right and ability to control or stop the infringing conduct but failed to do so." FAC at 11-27, ¶¶ 54, 62, 68, 74, 80, 86, 93, 98, 94, 104, 109, 116, 121, 128, 140, 148, 153, 159, 166, 172, 178, 183, 188, 193, 199. Conclusory allegations do not survive Rule 12(b)(6). *Luvdarts*, 710 F.3d at 1071.

Plaintiffs also have failed to allege the second required element of vicarious liability: that the defendant derived a direct financial benefit from the alleged infringement by another. *Fonovisa*, 76 F.3d at 262. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a *causal relationship* between the infringing activity and any financial benefit a defendant reaps . . . ." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (emphasis added). Plaintiffs fail to allege any causal link between any defendant's "direct financial benefit" and another's alleged infringement of *I Need to Love*, let alone a direct infringement that the defendant supposedly had the right and ability to control. Instead, their First Amended

1    Complaint repeats indiscriminately as to each and every defendant, that they, as
2    "owner[s]" of the allegedly infringing *A Lonely Night* have "received significant
3    financial benefits as a result of the infringement."  FAC at 11-27, ¶¶ 56, 64, 68, 70,
4    76, 83, 88, 95, 100, 106, 111, 118, 123, 130, 142, 150, 155, 161, 168, 174, 178, 180,
5    185, 190, 195, 201.  Plaintiffs not only ignore their own allegations that defendants,
6    as alleged owners of *A Lonely Night*, are supposedly direct infringers, but fail to
7    identify the defendants they claim are vicariously liable and fail to identify the claimed
8    direct infringement for which they are supposedly vicariously liable.  And plaintiffs'
9    claim is not saved by their allegation that the unidentified defendants, who are not
10   direct infringers, are the unidentified defendants who are vicariously liable. *See above*
11   at 5:12-21 & 7-8.

12        Plaintiffs' third claim for vicarious copyright infringement again impermissibly
13   relies on conclusory allegations and should again be dismissed.  Further, given
14   plaintiffs' failure to comply with the Court's Order and plaintiffs' concession that they
15   do not know of any basis to charge any particular defendant with vicarious copyright
16   infringement, this claim should be dismissed without leave to amend.

17        **(c)**   **Plaintiffs' State Law Claims for an Accounting, Constructive Trust,**
18             **and Unjust Enrichment Again Fail as a Matter of Established Law**

19        Plaintiffs have admitted that their claims for an accounting, constructive trust,
20   and unjust enrichment are each preempted by the Copyright Act.  But they argued that
21   these state law claims were intended to be pleaded as an alternative to plaintiffs'
22   copyright infringement claims in case Big Music UK or Universal Publishing UK
23   licensed the alleged use of *I Need to Love* in *A Lonely Night*.  Aug. 23, 2019 Order at
24   8; Complaint at 3, ¶¶ 3-5; Plaintiffs' Aug. 5, 2019 Opposition at 9:4-6 & at 18:4-5.

25        The Court dismissed the three state law claims because plaintiffs did not include
26   "adequate well-pleaded allegations supporting this 'secret license' theory or expressly
27   state that Plaintiffs are pursuing their state law claims in the alternative should a
28   'secret license' provide defendants with a defense to the copyright infringement

claims, . . . ."  Aug. 23, 2019 Order at 8.  However, plaintiffs' First Amended Complaint does not cure those defects or comply with the Court's Order.

In addition, the existence of a license would immunize defendants from any liability, leaving plaintiffs to pursue any accounting or other claims they have against the licensor—either Big Music UK or Universal Publishing UK, both of whom defendants have dismissed from the case.  Moreover, plaintiffs also allege that no license was authorized, and plaintiffs have already conceded that, in the absence of a license, their state law claims are preempted by the Copyright Act.

### (1)   Plaintiffs Fail to Allege that their Sixth Claim for Unjust Enrichment Is Pleaded in the Alternative

Although plaintiffs "expressly state[ ]" that their fourth and fifth claims for, respectively, an accounting and constructive trust are pleaded as alternatives to their copyright claims, plaintiffs omit that language from their sixth claim for unjust enrichment.  *Compare* FAC at 37, ¶ 242, & at 39, ¶ 252, *with id.* at 41-42.  Whether a mistake or intentional, for this reason alone the amended claim for unjust enrichment fails to comply with the Court's Order.

### (2)   Plaintiffs Fail to Plead Their "Secret License" Theory

Plaintiffs' First Amended Complaint does not "contain adequate well-pleaded allegations supporting [a] 'secret license' theory . . . ."  Aug. 23, 2019 Order.  Instead, plaintiffs allege that "Defendants will likely claim at some point in this lawsuit that they were given permission by Universal to use the song, and that because they allegedly had a license they are not liable for copyright infringement."  FAC at 37, ¶ 245, at 39, ¶ 255, & at 41, ¶ 262.  That is pure speculation and "speculation 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (*quoting Twombly*, 550 U.S. at 557).

///

///

1         **(3)**     **A License to Use *I Need to Love* Would Not Save Plaintiffs'**

2                 **State Law Claims**

3                 **(i)**     **If Plaintiff's UK Publishers Issued a License, Plaintiffs'**

4                       **Claims Would Be Against Them, Not Defendants**

5         Not only is plaintiffs' "secret license theory" inadequately plead, but if in fact

6 one or both of plaintiffs' UK publishers—non-parties Big Music UK and Universal

7 Publishing UK—licensed the alleged use of *I Need to Love*, under established law

8 plaintiffs' sole remedy is against the licensor.

9         The license would be a complete defense to the infringement claims. *Sun*

10 *Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999). And

11 plaintiffs' remedy, if any, for the issuance of the license would be claims against the

12 licensor either under the contract that granted the licensor authority to issue the license

13 or for an accounting if the licensor co-owned the copyright in *I Need to Love* when it

14 issued the license. FAC at 20, ¶ 134 (plaintiffs' publisher's rights were "ceded . . .

15 back to Plaintiffs"); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996) ("Because

16 a co-owner is an owner, he has a right to use or license the use of the copyright");

17 *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984) (co-owner's remedy for co-owner's

18 license is to sue co-owner for an accounting); *Piantadosi v. Loew's, Inc.*, 137 F.2d

19 534, 536–37 (9th Cir. 1943) (recipient of "valid license to use the song [has] a good

20 defense to a suit by co-owner" of song's copyright); 1 M. NIMMER & D. NIMMER,

21 NIMMER ON COPYRIGHT § 6.10 (2019) ("[A] joint author may . . . grant licenses to

22 third parties."); 6 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 21.38.50 (2019) ("a

23 joint owner has the ability to license the work nonexclusively without the permission

24 of (or even over the objection of the other) joint owners").

25         If plaintiffs' speculation were true and a license was issued, plaintiffs' remedy

26 would be to sue the licensor, which they have dismissed from the case. Accordingly,

27 plaintiffs' license theory does not save their state law claims against defendants.

28 ///

**(ii)** **Plaintiffs' UK Publisher's Issuance of a License to Use** *I Need to Love* **Would Not Make Plaintiffs Co-Owners of** *A Lonely Night*

In a footnote in their First Amended Complaint, plaintiffs asserted that if defendants did receive a license to use *I Need to Love* in *A Lonely Night*, then *A Lonely Night* would be a derivative work that plaintiffs co-own.  FAC at 38, n. 2.  That claim is untenable.

It is black-letter copyright law that "[t]he copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, . . . ."  17 U.S.C. § 103(b); *Stewart v. Abend*, 495 U.S. 207, 223 (1990) ("The aspects of a derivative work added by the derivative author are that author's property"); 1 NIMMER ON COPYRIGHT § 3.04[A] (derivative work copyright protects only new matter by author of derivative work). As a result, the owner of a preexisting work is not an owner of a derivative version, absent authorship of the alleged new material.  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1218–19 (9th Cir. 1997) ("[C]opyright in a derivative work 'extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work.'" (*quoting* 17 U.S.C. § 103(b)).  Otherwise, for example, the author of a book made into a movie would be an owner of the movie too.

Plaintiffs have conceded, as they must, that they did not author the new matter allegedly added to *I Need to Love* to create *A Lonely Night*.  FAC at 5, ¶ 18 & at 31, 218.  As a result, it is beyond peradventure that they cannot be owners of *A Lonely Night*.

Defendants understand that plaintiffs will again rely on *Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014).  The Court already rejected plaintiffs' argument that *Brownstein* supported their now-dismissed claim that because they contend *A Lonely Night* infringes their copyright, they are co-authors or co-owners of *A Lonely Night*.

1    Aug. 23, 2019 Order at 5, 6-7. *Brownstein* also does not support plaintiffs claim that

2    if the alleged use of *I Need to Love* was licensed then plaintiffs are owners of the

3    resulting derivative work, *A Lonely Night*.

4         In *Brownstein*, the parties co-authored a computer program, but the defendant

5    disputed whether the plaintiff was an owner of subsequent versions and, if he was,

6    contended that the plaintiff's ownership claim was time-barred. 742 F.3d at 58-59,

7    65. On appeal from the grant of the defendant's Federal Rule of Civil Procedure 50(a)

8    motion, the Third Circuit panel reversed, concluding, *inter alia*, that "[t]he extent of

9    [the plaintiff's] authorship and ownership of these derivative works is a factual

10   question that must be decided by a jury." *Id.* at 68. The crucial distinguishing fact

11   present in *Brownstein* and absent here is that the parties were potentially co-authors

12   of the derivative version. The Court has already concluded that plaintiffs' own

13   allegations that they "did not contribute to the original aspects of defendants' musical

14   composition," preclude any argument that plaintiffs co-authored *A Lonely Night*. Aug.

15   23, 2019 Order at 7.

16        It is axiomatic that the owner of a work incorporated by another in creating a

17   derivative work is not an author or owner of the derivative work. Accordingly, there

18   is no merit to plaintiffs' claim that if their UK Publishers licensed the use of *I Need to

19   Love* in *A Lonely Night*, plaintiffs would be co-authors or co-owners of *A Lonely

20   Night*.

21            **(4)    Plaintiffs' Claims Are Preempted if, as Plaintiffs Allege, Their**

22                     **UK Publishers Were Not Authorized to Grant a License**

23        Plaintiffs also allege that they "do not believe that Universal had the right or

24   ability to authorize the other Defendants to use Plaintiffs' copyright to create 'A

25   Lonely Night.'" FAC at 37, ¶ 246, at 39, ¶ 256, & at 41, ¶ 263. That allegation

26   undercuts their "secret license" theory and dooms their state law claims because if a

27   valid license was not granted, then the alleged use of *I Need to Love* would be

28   copyright infringement and—as plaintiffs have conceded—the Copyright Act would

preempt their state law claims.  Aug. 23, 2019 Order at 8; 17 U.S.C. § 301(a); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997) (accounting claim preempted); *Salim v. Lee*, 202 F. Supp. 2d 1122, 1127 (C.D. Cal. 2002) (constructive trust claim preempted); *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 976 (9th Cir. 2011) (unjust enrichment claim preempted).

**3.    CONCLUSION**

Plaintiffs have failed to comply with the Court's Order granting them leave to amend.

Plaintiffs still base their claims of secondary liability on conclusory allegations that fail to identify any secondarily liable defendants or why and for what they are supposedly secondarily liable.  Moreover, plaintiffs try to sidestep the Court's Order by blandly alleging that all "Defendants" not directly liable are secondarily liable.  Plaintiffs also have admitted that they simply do not know of any basis to allege any particular defendant is secondarily liable, and instead, plaintiffs plead the claims in the hope that a jury can sort it out.  Plaintiffs' second and third claims are properly dismissed again, this time without leave to amend.

Plaintiffs fare no better on their three state law claims.  Plaintiffs fail to allege that their last state claim is pleaded in the alternative and also fail to plead their theory that their UK Publishers might have issued a "secret license" authorizing the alleged use of *I Need to Love*.  In any event, either (1) the license exists and plaintiffs' sole claims are against the UK Publishers that plaintiffs have dismissed from the case, or (2) the license does not exist and the Copyright Act preempts plaintiffs' state claims

///

///

///

///

///

17

1   for the unlicensed use of *I Need Love*.  These state law claims also should be dismissed

2   again, this time without leave to amend.

3   DATED: October 10, 2019

   _____/s/ Peter Anderson_____
4                                           Peter Anderson, Esq.
                                            Nicolette Vairo, Esq.
5                                           DAVIS WRIGHT TREMAINE LLP
                                            Attorneys for Defendants
6                                           ABEL M. TESFAYE,
                                            UNIVERSAL MUSIC GROUP, INC.,
7                                           UMG RECORDINGS, INC.,
                                            UNIVERSAL MUSIC PUBLISHING, INC.,
8                                           UNIVERSAL MUSIC CORPORATION,
                                            KOBALT MUSIC PUBLISHING AMERICA
9                                           INC., WARNER CHAPPELL MUSIC, INC.,
                                            WB MUSIC CORP., SONGS MUSIC
10                                          PUBLISHING, LLC, JASON
                                            QUENNEVILLE, AHMED BALSHE,
11                                          WASSIM SALIBI, THE WEEKND XO,
                                            LLC, THE WEEKND XO, INC., THE
12                                          WEEKND XO MUSIC, ULC, DAHEALA &
                                            CO., LLC, SAL & CO MANAGEMENT LP,
13                                          SAL & CO LP, and XO&CO., INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28