1  Peter Anderson, Esq. (Cal. Bar No. 88891)
       peteranderson@dwt.com
2  Nicolette Vairo, Esq. (Cal. Bar No. 311592)
       nicolettevairo@dwt.com
3  DAVIS WRIGHT TREMAINE LLP
   865 South Figueroa Street, 24th Floor
4  Los Angeles, California  90017-2566
   Telephone:  (213) 633-6800
5  Fax:  (213) 633-6899

6  Attorneys for Defendants
   ABEL M. TESFAYE, JASON QUENNEVILLE,
7  AHMED BALSHE, WASSIM SALIBI,
   THE WEEKND XO, LLC, THE WEEKND XO, INC.,
8  THE WEEKND XO MUSIC, ULC, DAHEALA & CO.,
   LLC, SAL & CO MANAGEMENT LP, SAL & CO LP,
9  XO&CO., INC., UNIVERSAL MUSIC GROUP, INC.,
   UMG RECORDINGS, INC., UNIVERSAL MUSIC
10 PUBLISHING, INC., UNIVERSAL MUSIC
   CORPORATION, KOBALT MUSIC
11 PUBLISHING, INC., WARNER CHAPPELL
   MUSIC, INC., WB MUSIC CORP., and
12 SONGS MUSIC PUBLISHING, LLC

13              **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15                    **WESTERN DIVISION**

16 William Smith; Brian Clover; Scott          )   Case No. 2:19-cv-02507-PA-MRWx
   McCulloch,                                  )
17                                             )
                          Plaintiffs,          )   REPLY MEMORANDUM OF
18                                             )   POINTS AND AUTHORITIES IN
               v.                              )   SUPPORT OF MOTION TO
19                                             )   DISMISS
   The Weeknd; Abel M. Tesfaye (p/k/a The      )
20 Weeknd); Jason Quenneville (p/k/a           )   [Fed. R. Civ. P. 12(b)(6)]
   DaHeala); Ahmad Balshe (p/k/a Belly);       )
21 Savan Harish Kotecha; Ali Payami; Karl      )
   Martin Sandberg (p/k/a Max Martin);         )   Date: November 18, 2019
22 Peter Anders Svensson; The Weeknd           )   Time: 1:30 p.m.
   XO, LLC; The Weeknd XO, Inc.;               )
23 DaHeala & Co., LLC; MXM, LLC;               )   Courtroom of the Honorable
   MXM Publishing; MXM Music AB;               )   Percy Anderson
24 Wolf Cousins; Universal Music Group,        )   United States District Judge
   Inc. Universal Music Publishing, Inc.;      )
25 Universal Music Corporation; Universal      )
   Music Publishing LTD; Universal Music       )
26 Publishing BL Limited; Big Life Music       )
   Ltd; Kobalt Songs Music Publishing,         )
27 Inc.; KMR Music Royalties II SCSP;          )
   SONGS Music Publishing LLC; Songs           )
28         [Continued next page]               )

1  Warner/Chappell Music, Inc.; WB      )
   Music Corp.; Warner/Chappell Music   )
2  Scandinavia AB Sal and CO Manage-    )
   ment LP; Sal and CO LP; Wassim Salibi )
3  (aka Tony Sal) (general partner of Sal )
   and Co); Artist Nation Management    )
4  Group, Inc. (general partner of Sal and )
   Co); The Weeknd XO Music, ULC        )
5  XO&co., Inc. (d/b/a XO) UMG Record-  )
   ings, Inc. (d/b/a Republic Records);  )
6                                       )
                 Defendants.            )
7                                       )
                                        )
8  _____   )

# **TABLE OF CONTENTS**

**Page**

1. SUMMARY OF ARGUMENT ...........................................................................1

2. THE SECOND THROUGH SIXTH CLAIMS SHOULD BE
   DISMISSED ....................................................................................................1

   (a) Plaintiffs' Opposition Fails to Save Their Second and Third
       Claims for Contributory and Vicarious Copyright Infringement ............1

       (1) Plaintiffs' Allegation that All Defendants Are Either
           Directly or Secondarily Liable Does Not Satisfy the Court's
           Order ............................................................................................1

       (2) Plaintiffs Fail to Plead a Plausible Claim Against Any
           Defendant for Contributory or Vicarious Infringement ...............2

           i.   Plaintiffs Admit They Cannot Identify Any
                Defendant Who Is Secondarily Liable ................................2

           ii.  Plaintiffs Repeat Their Conclusory Allegations and
                Also Negate Their Assertions of Secondary Liability ........3

           iii. Plaintiffs Cannot Avoid the Obligation to Plead a
                Plausible Claim by Hoping Discovery Will Reveal
                One ...................................................................................5

   (b) Plaintiffs' State Law Claims for an Accounting, Constructive
       Trust, and Unjust Enrichment Also Should Be Dismissed....................6

       (1) Plaintiffs Fail to Allege that their Sixth Claim for Unjust
           Enrichment Is Pleaded in the Alternative .....................................6

       (2) Plaintiffs Fail to Plead a Plausible "Secret License" Theory ........6

       (3) Pleading a Secret License to Use *I Need to Love* Would Not
           Have Saved Plaintiffs' State Law Claims ....................................7

i

(i)     If One of Plaintiffs' UK Publishers Issued a License, Plaintiffs' Claims Would Be Against it, Not Defendants ...............................................................................7

(ii)    Plaintiffs' UK Publisher's Issuance of a License to Use *I Need to Love* Would Not Make Plaintiffs Co-Owners of *A Lonely Night* ................................................10

(4)    Plaintiffs' Claims Are Preempted if, as They Allege, Their UK Publishers Were Not Authorized to Grant a License ...........10

3.    CONCLUSION ................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ...................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................4

*Brownstein v. Lindsay*,
    742 F.3d 55 (3d Cir. 2014) ....................................................................7, 8

*DeHoog v. Anheuser-Busch InBev SA/NV*,
    899 F.3d 758 (9th Cir. 2018) ....................................................................4

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
    820 F.2d 973 (9th Cir. 1987) ....................................................................9

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ......................................................................5

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998) ..................................................................8, 9

*Grosso v. Miramax Film Corp.*,
    383 F.3d 965, 968 (9th Cir. 2004), opinion amended on denial of
    reh'g, 400 F.3d 658 (9th Cir. 2005) .........................................................9

Luvdarts, LLC v. AT & T Mobility, LLC,
    710 F.3d 1068 (9th Cir. 2013) ..................................................................3

*Malinowski v. Playboy Enterprises, Inc.*,
    706 F. Supp. 611 (N.D. Ill. 1989).........................................................8, 9

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    12 F. Supp. 3d 1341 (W.D. Wash. 2014) ................................................2

*Motown Record Corp. v. George A. Hormel & Co.*,
    657 F. Supp. 1236 (C.D. Cal. 1987) .......................................................9

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) .................................................................6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................5

*Recorded Picture Co. v. Nelson Entm't, Inc.*,
    53 Cal. App. 4th 350, 61 Cal. Rptr. 2d 742 (1997) ...............................9

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) .................................................................8

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) ...............................................................9

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*,
    446 F. Supp. 2d 1164 (E.D. Cal. 2006) .................................................8

*Wolfe v. United Artists Corp.*,
    583 F. Supp. 52 (E.D. Pa. 1983) ........................................................8, 9

**Statutes**

17 U.S.C.
    § 103(a) .............................................................................................6, 8
    § 103(b) ................................................................................................7
    § 106(6) ................................................................................................4
    § 504(b) ................................................................................................8

Copyright Act ...........................................................................4, 6, 8, 9

**Rules**

Federal Rules of Civil Procedure 8 .............................................................3

Federal Rules of Civil Procedure 11 ...........................................................3

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## 1.  SUMMARY OF ARGUMENT

It is commonplace for litigants to begin reply papers by stating that the opposition confirms a motion should be granted.  Here, that is actually true.

Plaintiffs admit that they have no basis to identify any defendant as supposedly liable for contributory or vicarious infringement and, instead, plaintiffs speculate that perhaps discovery will reveal a basis for them to assert those claims against all defendants.  Opposition (Doc. 70) at 7:8-10 ("it [is] impossible to know without discovery whether the infringements in question are direct, contributory, or vicarious.").  Plaintiffs cannot avoid dismissal by arguing discovery might lend support for the claims they assert.  Further, plaintiffs continue to misapprehend the nature of contributory and vicarious copyright infringement when they argue that defendants can both own or control the allegedly infringing song and authorize its exploitation but also be secondarily liable for those alleged direct infringements.

Plaintiffs also confirm that they cannot plead a non-speculative, plausible "secret license" theory supporting their state law claims.  They simply conflate their non-party UK publisher with the U.S. Universal defendants and speculate that "Universal" might have issued a license.  Nor do plaintiffs refute that if their UK publisher did issue a license, their claims, if any, are against that publisher, not defendants, with whom plaintiff did not contract.

Defendants respectfully submit that their Motion to Dismiss should be granted.

## 2.  THE SECOND THROUGH SIXTH CLAIMS SHOULD BE DISMISSED

### (a)  Plaintiffs' Opposition Fails to Save Their Second and Third Claims for Contributory and Vicarious Copyright Infringement

#### (1)  Plaintiffs' Allegation that All Defendants Are Either Directly or Secondarily Liable Does Not Satisfy the Court's Order

In their initial Complaint, plaintiffs alleged that all defendants are directly, contributorily, **and** vicariously liable for copyright infringement.  In dismissing

1

plaintiffs' claims for contributory and vicarious infringement, the Court confirmed that "a defendant cannot be secondarily liable for that defendant's own direct infringement" and required that plaintiffs plead more than bare conclusions. Aug. 23, 2019 Order (Doc. 56) at 4-5. In their First Amended Complaint, however, plaintiffs simply allege that all defendants are directly, contributorily, **or** vicariously liable for copyright infringement. FAC at 33, ¶ 229 (if "some or all of Defendants' actions and inactions are determined to not be directly infringing, then they are alleged to be contributorily infringing"), & at 35, ¶ 236 (if "some or all of Defendants' actions and inactions are determined to not be directly infringing, then they are alleged to be vicariously infringing").

By that expediency, plaintiffs dodge, rather than comply with, the Court's Order. They fail to parse out the alleged direct and secondarily liable infringers and fail to allege as to each defendant facts establishing either a plausible claim of direct infringement, a plausible claim of contributory infringement, or a plausible claim of vicarious infringement.

Plaintiffs argue that they are permitted to plead claims in the alternative. Opposition at 12-13. But the ability to plead an alternative claim "does not relieve plaintiffs of their obligation to plead sufficient factual allegations in support of that request." *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1354 (W.D. Wash. 2014). Plaintiffs' allegations that all defendants are direct infringers unless they are contributory or vicarious infringers does not pass muster.

### (2)   Plaintiffs Fail to Plead a Plausible Claim Against Any Defendant for Contributory or Vicarious Infringement

#### i.   Plaintiffs Admit They Cannot Identify Any Defendant Who Is Secondarily Liable

Like their initial Complaint, plaintiffs' First Amended Complaint asserts against all defendants claims for direct, contributory, and vicarious infringement. FAC at 30:1-4, 22:1-4, & 35:1-4. While plaintiffs add that those defendants who are

not directly liable are contributorily or vicariously liable, plaintiffs' First Amended Complaint fails to identify any defendant who falls in that category.

The reason is that, as plaintiffs' Opposition admits, they simply have no basis on which to assert secondary liability claims against any particular defendant. *See, e.g.,* Opposition at 7:8-10 (plaintiffs do not know "whether the infringements in question are direct, contributory, or vicarious"). Lacking a basis consistent with Federal Rules of Civil Procedure 8 and 11 to assert secondary liability claims against any specific defendant is not a permitted basis to sue all defendants for contributory and vicarious infringement. Yet that is exactly what plaintiffs have now twice done.

### ii.   Plaintiffs Repeat Their Conclusory Allegations and Also Negate Their Assertions of Secondary Liability

Conclusory allegations do not support claims for contributory or vicarious copyright infringement. Luvdarts, LLC v. AT & T Mobility, LLC, 710 F.3d 1068, 1071-72 (9th Cir. 2013). Accordingly, in granting plaintiffs leave to amend those claims the Court made it clear that plaintiffs "must include well-pleaded facts as opposed to legal conclusions . . . ." Aug. 23, 2019 Order at 5. But in their First Amended Complaint plaintiffs again allege the elements of the claims without any factual content establishing a plausible claim that any of the defendants plaintiffs allege are direct infringers are instead contributory or vicarious infringers. *See* Defs' Memo. (Doc. 67-1) at 4-5, 8-12. Further, plaintiffs' Opposition confirms that plaintiffs simply cannot plead viable secondary liability claims.

First, plaintiffs' Opposition repeats their First Amended Complaint's conclusory allegations that fail to differentiate among the defendants or identify any defendant who is supposedly secondarily, rather than directly, liable. Opposition at 9-11. Opposing the Motion by repeating bare legal conclusions only confirms that plaintiffs cannot plead more.

Second, plaintiffs admit that they do not have any basis to identify any defendants as contributory or vicarious infringers. *See, e.g.,* Opposition at 7:8-15

(plaintiffs do not know "the role of each Defendant in [the alleged] infringements (direct, contributory, vicarious)"). If plaintiffs do not know who is supposedly a contributory or vicarious infringer, plaintiffs should not be suing defendants for contributory and vicarious copyright infringement.

Third, plaintiffs confirm that they are only speculating that some defendants might be secondarily liable rather than directly liable. Plaintiffs assert that there have been "millions of infringements," apparently treating each digital stream of *A Lonely Night* as a separate infringement even though it would be the alleged violation of a single exclusive right. 17 U.S.C. Section 106(6). Relying on their hyperbole, plaintiffs conclude it is "not only possible, but likely," that someone is a contributory or vicarious infringer. Opposition at 12-13. However, plaintiffs' "speculation 'stops short of the line between possibility and plausibility of entitlement to relief.'" *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Finally, plaintiffs ultimately negate their conjecture that some unspecified defendants may be contributory or vicarious infringers.

Plaintiffs allege that all defendants own or control the allegedly infringing song, *A Lonely Night*, and have authorized its exploitation in violation of plaintiffs' exclusive rights under the Copyright Act. *See, e.g.,* FAC at 7-8, ¶¶ 28-34, & at 31, ¶ 222. Because of those allegations, and although infringement is strenuously denied, defendants have not challenged at the pleading level plaintiffs' first claim for direct copyright infringement. In their Opposition, however, plaintiffs declare that "it is beyond peradventure that if a copyright owner is somehow not directly liable, then contributory and vicarious liable are appropriate causes of actions given their financial benefit and right and ability to supervise the infringing activity." Opposition at 12:9-12. Notably, plaintiffs fail to cite to a single authority to support that supposedly unassailable proposition. That is because plaintiffs are simply wrong about the nature of secondary liability.

Contributory infringement is not committed by owners of the allegedly infringing work, but by those who knowingly and materially facilitate another's infringement by, for example, maintaining a website that allows others to make and distribute infringing copies. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001). Similarly, vicarious infringement is not committed by owners of the allegedly infringing work, but by those who have the practical ability to stop another's infringement but fail to do so and directly benefit financially by, for example, operating a swap meet and renting booths to people who sell bootleg recordings. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996).

Plaintiffs fail to cite any case supporting their proposition that a defendant who owns or controls an allegedly infringing work and authorizes its exploitation is somehow a contributory or vicarious infringer. Plaintiffs cite *Fonovisa* (Opposition at 12:2-8), but there the defendant swap meet company neither owned the bootleg recordings nor sold them. Unable to find actual case law support, the best that plaintiffs can do is ask whether "an administrator of an infringing copyright, who receives a share of the song's profits . . . in return for collecting royalties, directly or secondarily liable?" *Id.* at 9:16-19. However, an administrator who merely collects royalties is no more a direct or secondary infringer than credit card companies that collect payments for infringing works. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796-806 (9th Cir. 2007).

Plaintiffs rely on conclusions and speculation and argue themselves out of a secondary infringement claim.

### iii.   Plaintiffs Cannot Avoid the Obligation to Plead a Plausible Claim by Hoping Discovery Will Reveal One

Plaintiffs are unequivocal that they do not have a non-conjectural, factual basis to support their claims of contributory or vicarious infringement but that perhaps discovery might reveal a basis. Opposition at 2:15-17, 7:8-15, 9:20-23, 11:21-22 ("Discovery should proceed to determine what is the most appropriate cause of action

1  against each defendant"), 12:12-15 (the parties can stipulate to dismissal of the

2  secondary liability claims if discovery reveals them to be baseless).  But it is well-

3  established that conclusory allegations do "not unlock the doors of discovery . . . ."

4  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Mujica v. AirScan Inc.*, 771 F.3d 580,

5  593 (9th Cir. 2014) (because, absent discovery, an amendment would be futile,

6  dismissal affirmed).

7  Plaintiffs' claims for contributory and vicarious copyright infringement are not

8  supported by any relevant factual allegations.  And plaintiffs concede they cannot

9  allege more.  Accordingly, plaintiffs' claims for contributory and vicarious copyright

10  infringement should be dismissed, this time without leave to amend.

11  **(b)  Plaintiffs' State Law Claims for an Accounting, Constructive Trust,**

12  **and Unjust Enrichment Also Should Be Dismissed**

13  Plaintiffs' Opposition also fails to save their fourth through sixth claims for,

14  respectively, an accounting, imposition of a constructive trust, and unjust enrichment.

15  **(1)  Plaintiffs Fail to Allege that their Sixth Claim for Unjust**

16  **Enrichment Is Pleaded in the Alternative**

17  In granting plaintiffs leave to amend these claims, the Court required that to

18  avoid preemption by the Copyright Act, 17 U.S.C. Section 301(a), plaintiffs allege

19  that these claims are asserted in the alternative to plaintiffs' copyright claims.  Aug.

20  23, 2019 Order at 8.  The Motion to Dismiss raised that plaintiffs' First Amended

21  Complaint alleges that the claims for an accounting and constructive trust are pleaded

22  as alternatives to the copyright claims, but plaintiffs omit that language from their

23  claim for unjust enrichment.  Defs' Memo. at 13:11-16; *compare* FAC at 37, ¶ 242, &

24  at 39, ¶ 252, *with id.* at 41-42.  Plaintiffs' Opposition ignores this failure to comply

25  with the Court's Order.

26  **(2)  Plaintiffs Fail to Plead a Plausible "Secret License" Theory**

27  Plaintiffs base these three state law claims on speculation that perhaps

28  defendants obtained a "secret license" from plaintiffs' UK publisher, Big Life Music,

1    Ltd. ("Big Life UK"), or its successor, Universal Music Publishing BL Limited (for

2    convenience, only, "Universal Publishing UK"), to use plaintiffs' *I Need to Love*. The

3    Motion to Dismiss raised that plaintiffs' First Amended Complaint fails to include the

4    "adequate well-pleaded allegations supporting this 'secret license' theory . . ."

5    required by the Court's Order. Aug. 23, 2019 Order at 8.

6        Plaintiffs' Opposition, however, just conflates all of the U.S. Universal entities

7    that plaintiffs name as publishers and distributors of *A Lonely Night*, with the UK

8    entity that plaintiffs dismissed from this case, Universal Publishing UK, to argue that

9    "Universal" "represented Plaintiffs for years," "Universal" represents some

10   defendants, "Universal" distributes the album on which *A Lonely Night* appears, and

11   "Universal" might have issued a secret license. Opposition at 7:17-20. Rather than

12   well-pleaded allegations supporting a secret license, plaintiffs merely speculate based

13   on their failure to distinguish between (1) the non-party UK entity that represented

14   plaintiffs and had authority to act on their behalf, and (2) the U.S. entities that plaintiffs

15   claim are infringers and who have no contractual relationship with plaintiffs.

16           **(3)    Pleading a Secret License to Use *I Need to Love* Would Not**

17                    **Have Saved Plaintiffs' State Law Claims**

18               **(i)    If One of Plaintiffs' UK Publishers Issued a License,**

19                        **Plaintiffs' Claims Would Be Against it, Not Defendants**

20       The Motion to Dismiss also raised that even if plaintiffs adequately alleged that

21   one of their two UK publishers—non-parties Big Life UK and Universal Publishing

22   UK—licensed the alleged use of *I Need to Love*, plaintiffs' sole remedy would be

23   against the licensor. Defs' Memo. at 14.

24       In their Opposition, plaintiffs argue that if *A Lonely Night* is an authorized

25   derivative version of *I Need to Love*, then, "as authors of an underlying work, Plaintiffs

26   would . . . be entitled to share in the profits of" *I Need to Love*. Opposition at 13:14-

27   17. Plaintiffs cite 17 U.S.C. Section 103(b) and *Brownstein v. Lindsay*, 742 F.3d 55

28   (3d Cir. 2014) for the proposition that the author of a work incorporated in a derivative

1    work is entitled to a share of the profits from exploitation of the derivative work.

2    Opposition at 13:17-21.  But Section 103(b) states the contrary: that the preexisting

3    material is not protected by the copyright in a derivative version.  And plaintiffs ignore

4    that in *Brownstein* the claims included that the parties were co-authors of the

5    derivative works, a claim that the Court has already concluded plaintiffs cannot make

6    here.  Defs' Memo. at 16:4-15; Aug. 23, 2019 Order at 7.

7            Lacking any legal support for their position, plaintiffs pose a hypothetical to

8    argue that if 95% of an authorized derivative version were preexisting material than

9    the authors of that preexisting material would be entitled "to share the monies made

10   by the" derivative work and entitled to credit as authors and owners of the preexisting

11   material.  Opposition at 14:7-11.  But the Copyright Act provides no such entitlements.

12           "Copyright . . . is a creature of statute, and the only rights that exist under

13   copyright law are those granted by statute.  *Silvers v. Sony Pictures Entm't, Inc.*, 402

14   *F.3d 881, 883–84 (9th Cir. 2005)*.  While the Copyright Act provides for the recovery

15   of a defendant's profits attributable to the <u>infringing use</u> of the plaintiff's work (17

16   U.S.C. § 504(b)), there is no copyright right to payment for an <u>authorized use</u>.

17   *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) (copyright owner could not

18   recover "copyright damages" from licensed uses); *Malinowski v. Playboy Enterprises,*

19   *Inc.*, 706 F. Supp. 611, 615 (N.D. Ill. 1989) ("the case law that has developed since

20   adoption of the Copyright Act very specifically states that nonpayment of royalties

21   [from authorized use of plaintiff's work] do not constitute claims arising out of the

22   Copyright Act."); *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 55–56 (E.D. Pa.

23   1983) (same).  As the Court has already ruled, by definition *A Lonely Night* could only

24   be a derivative work if its alleged use of *I Need to Love* was authorized.  Aug. 23,

25   2019 Order at 6-7; 17 U.S.C. § 103(a) (preexisting material must be "[ ]lawfully"

26   incorporated in derivative work).  In addition, "it is well established that the right to

27   attribution is not a protected right under the Copyright Act."  *UMG Recordings, Inc.*

28   *v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) ("a

                                              8

party's rights and remedies under the Copyright Act must be derived from the infringement of one of the exclusive rights set forth in the Act [and t]he right to be credited is not one of these rights."); *Wolfe*, 583 F. Supp. at 55–56 (same).

As a result, plaintiffs have no copyright entitlement to payment or credit with respect to the alleged use of *I Need to Love* under a secret license that plaintiffs speculate might have been granted by one of plaintiffs' UK publishers. Instead, plaintiffs' state law claims for an accounting, constructive trust, and unjust enrichment are either (1) based on a contractual relationship[1] or (2) preempted by the Copyright Act.[2] And plaintiffs do not allege that they have a contract with defendants. Instead, plaintiffs allege that they entered into a contract with Big Life UK authorizing it to "shop" *I Need to Love*, and that Universal Publishing UK succeeded to Big Life UK's rights. FAC at 2, ¶ 3; Complaint (Doc. 1) at 3, ¶ 5. If one of those non-party UK companies licensed rights in *I Need to Love* to defendants, plaintiffs' state law claims would be against that UK company under plaintiffs' contract with the UK company. Plaintiffs would have no claim against defendants who—under plaintiffs' secret license theory—have a contract with the UK company, not with plaintiffs. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) (copyright owner who licenses use "can sue only for breach of contract" (quoting *Graham*, 144 F.3d at 236; *Recorded Picture Co. v. Nelson Entm't, Inc.*, 53 Cal. App. 4th 350, 356,

---

[1] *Malinowski*, 706 F. Supp. at 615 (while not a copyright issue, failure to pay royalties with respect to licensed use may "be a violation of the contract between the parties."); *Wolfe*, 583 F. Supp. at 55–56 (claims for failure to pay royalties and provide credit for licensed use "arise from contractual transactions between the plaintiff and defendants," not copyright).

[2] *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004), opinion amended on denial of reh'g, 400 F.3d 658 (9th Cir. 2005) (unjust enrichment claim preempted absent bilateral contractual relationship (citing *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987)); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1241 (C.D. Cal. 1987) (no contractual relationship between parties; claims for accounting and constructive trust preempted).

1  61 Cal. Rptr. 2d 742, 745 (1997) (sub-distributor's "obligations are governed by its

2  contract with the distributor, not by the producer-distributor agreement to which it was

3  not a party.").

4        As a result, even if plaintiffs had adequately pleaded—which they have not—a

5  "secret license" between defendants and one of plaintiffs' UK publishers, plaintiffs'

6  claims would be against that UK company, not defendants, and plaintiffs' state law

7  claims against defendants would still fail.

8                  **(ii)  Plaintiffs' UK Publisher's Issuance of a License to Use**

9                  ***I Need to Love* Would Not Make Plaintiffs Co-Owners**

10                 **of *A Lonely Night***

11       The Motion to Dismiss also raised that there is no merit to plaintiffs' assertion

12  in a footnote that if plaintiffs' UK publisher licensed the alleged use of *I Need to Love*

13  in *A Lonely Night*, then plaintiffs co-own *A Lonely Night*.  Defs' Memo. at 15-16.

14  Plaintiffs' Opposition merely repeats their assertion in another footnote, "for purposes

15  of preserving the argument, . . . ."  Opposition at 13 n.3.  A bare and patently incorrect

16  assertion in a footnote preserves nothing.

17                 **(4)  Plaintiffs' Claims Are Preempted if, as They Allege, Their**

18                 **UK Publishers Were Not Authorized to Grant a License**

19       Plaintiffs do not dispute that, if as they allege, the possible secret license was

20  unauthorized, their state law claims are preempted.  Defs' Memo. at 16-17.

21  **3.    CONCLUSION**

22       Plaintiffs have had two chances to plead their contributory and vicarious

23  copyright infringement claims and their state law claims, and plaintiffs continue to

24  rely on conclusory allegations and incorrect statements of law.  Plaintiffs also now

25  ///

26  ///

27  ///

28  ///

1  confirm that they have no basis in fact to plausibly allege these claims.  Accordingly,

2  the Motion to Dismiss should be granted, this time without leave to amend.

3  DATED: November 4, 2019

_____/s/ Peter Anderson_____
Peter Anderson, Esq.
Nicolette Vairo, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
ABEL M. TESFAYE,
UNIVERSAL MUSIC GROUP, INC.,
UMG RECORDINGS, INC.,
UNIVERSAL MUSIC PUBLISHING, INC.,
UNIVERSAL MUSIC CORPORATION,
KOBALT MUSIC PUBLISHING AMERICA
INC., WARNER CHAPPELL MUSIC, INC.,
WB MUSIC CORP., SONGS MUSIC
PUBLISHING, LLC, JASON
QUENNEVILLE, AHMED BALSHE,
WASSIM SALIBI, THE WEEKND XO,
LLC, THE WEEKND XO, INC., THE
WEEKND XO MUSIC, ULC, DAHEALA &
CO., LLC, SAL & CO MANAGEMENT LP,
SAL & CO LP, and XO&CO., INC.